WOLF, by Guardian *ad litem*, and another, Appellants, vs. UNITED SHIPPING COMPANY and another, Respondents.

*April 5—May 3, 1955.*

624

For the appellants there was a brief by *Clifford & Fitzpatrick* of Watertown, and oral argument by *James A. Fitzpatrick*.

For the respondents there was a brief by *Jeffris, Mouat, Oestreich, Wood & Cunningham*, and oral argument by *Louis D. Gage, Jr.*, and *Roy E. Berg*, all of Janesville.

FAIRCHILD, C. J.   Appellants, in connection with their claim that the jury were moved by passion and prejudice because of which a perverse verdict resulted, argue that the evidence produced at the trial did not support the jury's finding of no negligence on the part of respondent driver in respect to setting and maintaining proper warning signals. It is their contention that the evidence shows that Albert Zukauskis violated secs. 85.06 and 85.19 (1), Stats., by abandoning his vehicle and by failing to maintain proper signals in compliance with sec. 85.06 (18); and, further, that the burden of proof was upon respondents to show that Albert Zukauskis complied with the provisions of those statutes at and immediately prior to the time of the accident, instead of upon appellants to show the contrary.   Appellants point especially to testimony concerning the existence and location of lights and to the relation of the life of the twenty-

minute fusee, set by respondent driver, to the time of the accident.

In arriving at its conclusions, the jury had the following facts in the testimony before it upon which to base its findings: The accident happened several hundred feet south of the Martinson farm located about three miles south of Fort Atkinson on U. S. Highway 12. On the evening of the accident Mr. Martinson had left the Star school, where he had been attending a Christmas program, at about 10 o'clock. Star school was located about four tenths of a mile south of the driveway to his farm. He testified that at about 10 o'clock he and his family had come out of the schoolyard in their car to go onto the highway, where they turned to the left and went north.

"At that time we could see a spotlight on this semi as we came onto the highway. I saw the spotlight, up in the air, but didn't know what it was. . . . The weather conditions at the time that I made this observation was that it was sleeting. It was a very bad night. All we noticed is that spotlight until we got about 300 feet and then we saw a pot burning and then there was one red taillight underneath the box of the semi. I saw a pot burning about 75 to 100 feet behind the truck. . . . As we came up to the truck we met a car there at the time. We proceeded by it and I drove into my yard. The car that we met had enough room to pass. When we were alongside the truck the other car came from the opposite direction so that there were three vehicles sitting there and I drove into my yard, let my wife and children out and then proceeded to Fort Atkinson with my mother-in-law and another friend. It took me about half an hour before I got back again. I came right home and put my car in my tool shed and ran back up to the house with my head down because it was raining. When I got to about my milkhouse I heard a crash. It was about 10:30 at that time. The only thing I noticed was the parking lights on the front and the spotlight up in the air. . . . I knew somebody hit the semi and I ran out. . . . I then went back to the house and told

my wife to call the police. . . . It was not more than four or five minutes if it was that from the time I ran back to tell my wife to call the police."

The statement of the police officer at the trial was that the call reporting the accident was received at the police station at about 10:40.

Mrs. Johan Johnson, who also attended the program at the Star school on the evening of December 19th, testified that:

"After the program we took a lady and her children home near Fort Atkinson. As we proceeded on the highway we turned north. We saw a truck parked up the highway with flares that burned. It was raining good at that time for that time of the year. There were two flares placed behind the truck. The first one about 100 feet behind the truck alongside the road. The next flare was about 30 feet behind the truck. We proceeded on into Fort Atkinson. It was sometime after 10 o'clock."

The testimony of Donald Buckingham, the truck driver who drove respondent Zukauskis into Whitewater, was as follows:

"We . . . left the Christmas party about 10 o'clock. . . . As I turned out of the schoolhouse driveway I saw a truck parked up the road about half a mile with lights on it. As I proceeded north the weather conditions at the time were rainy and sleety. After we rounded a light bend in the road I saw flares burning at approximately 110 feet and one between five and ten feet behind the trailer. . . . I went to my mother-in-law's home in Fort Atkinson . . . and came right back. As I came back toward the scene where the truck had been parked, about half a mile before I got where it was you could see the spotlight, it was shooting up in the air. The trailer lights were lit on the top of the trailer, the cab lights were lit, and the two little parking lights above the headlights were lit. I slowed down to a stop opposite it . . . and asked the driver what the trouble was. . . . I told him I was going to Whitewater. . . . The spotlight was shining

up in the air, the trailer lights lit, and both flares were out. . . . It was about 10:20 to 10:25 when I stopped to pick up the driver."

All of this testimony by disinterested witnesses corroborates the respondent Zukauskis' own testimony that:

"The two flares that I testified to, I put one back six to ten feet behind the truck and the other approximately 100 feet or so on the highway. . . . This driver picked me up to bring me to Whitewater probably quarter after ten or so—it was after ten o'clock."

He also testified:

"Before I left to go to Whitewater the lights on my vehicle were a cluster on top, one on each corner on the bottom, and one on the center; that is the stop light. As I left to go to Whitewater I had the parking lights on the tractor, cab lights in a cluster, one on each corner, and a spotlight up in the air, and the trailer lights were on and I also put another fusee just before I left. This is including the flare pots that I had previously put out."

With reference to the condition of the lights after the collision, Zukauskis testified that he did not look for the destroyed flares and pots until after he talked with the police, who were present when he returned to the scene. One of the officers walked back with a flashlight. The flare farthest back was found on the shoulder of the road. There is no verbal description by any witness of the path followed by appellant Frank Wolf as he approached the tractor and ran into it. The condition of the road and the demolished condition of his car afford grounds for some inferences. The road was slippery. The left rear end of the trailer was hit by the right front part of the automobile driven by Frank Wolf. The only person who was present the instant the collision occurred was the appellant, Frank Wolf. His testimony does not help. It falls into the category of the negative. It cannot

be of consequence against affirmative testimony found in the record. All that Frank Wolf could tell was that he was driving from Whitewater, that—

"I remember I was going down the road and I didn't see any flares, I didn't see any pots, I didn't see any lights at all on the rear end of the truck. I didn't see the truck at all, and I don't recall hitting the truck. I did not see a bit of light in the back of it at all; it was just sort of a mist. . . . The condition of the roadway at the scene of the accident was slushy sleet. I had to have the windshield wipers going. . . . I left Whitewater about 10:20."

Against that negative testimony, as far as the jury were concerned in determining the presence of flares, fusees, and other lights on the trailer, was that of Albert Zukauskis, well supported by that of disinterested witnesses, Mr. Martinson, Mrs. Johnson, and Mr. Buckingham, quoted above.

The fact that all of the lights were out after the impact is logically explained by Mr. Zukauskis. The series of wires that controlled all of the lights on the truck were located at the left rear corner of the trailer at the point at which Frank Wolf collided with it. The lights were put out of commission by the impact.

The important point with reference to the setting and maintaining of the fusee is not how long respondent driver was absent from his trailer, but how much time elapsed between his setting the fusee and the moment of impact. It was established that all of the people attending the Star school program left at 10 o'clock or shortly thereafter. If Mr. Buckingham drove from the school to Fort Atkinson, left his mother-in-law off at her home and returned to the place where the trailer was standing—in all a distance of over six miles—it is reasonable for the jury to believe that the time at which he and Zukauskis left the trailer to go to Whitewater, which was the time at which Zukauskis lighted the fusee involved here, was 10:15 or later. The crash was

heard by Mr. Martinson at 10:30, and other testimony shows that the collision occurred at about 10:30. In the light of those facts, supplied by positive testimony, the jury were warranted in concluding that the fusee would not have been exhausted when the collision occurred, but that there would have been several minutes of its life left.

As to appellants' claim that the first flare was not properly placed because the respondent driver stated that it was "six feet" behind the trailer (as against the statutory requirement of 10 feet), the testimony shows that the distance of "six feet" was merely an approximation by respondent driver. Other witnesses estimated that the distance was from five to 30 feet behind the trailer.

If the burden of proof was upon respondents, they have presented sufficient credible evidence to support the finding of the jury that Albert Zukauskis was not negligent in placing and maintaining fusees, flares, and other warning devices in compliance with sec. 85.06 (18), Stats., and to show that the leaving of the trailer by its driver was only temporary and for the purpose of getting help.

Appellants' second contention is that there should be a new trial because "the jury's answers to the questions on damages were grossly inadequate and demonstrated the passion and prejudice of the jury." The testimony presented to the court does not warrant that assertion. The jury did assess damages for personal injuries, "including his pain and suffering and permanent injuries." And the evidence fails to show to a reasonable certainty permanent injury or the likelihood of further medical expense. The physician of the appellant, Frank Wolf, was the only witness who, from a medical standpoint, testified concerning the injuries received. He did not give a description of injuries which would tend to require further treatment. In ruling upon the motions after verdict, the learned trial judge summarized with exact-

ness the evidence upon this point as follows: "The injuries of the plaintiff consisted of lacerations and contusions upon the plaintiff's face and forehead, a slight brain concussion, and traumatic injuries to the back and knee. Evidently the jury concluded, as well it might, that there had been a good recovery from such injuries, and that they were not sufficiently serious in extent to warrant a greater award. The jury and the court had an opportunity to observe the plaintiff, and were in a position to form a judgment as to the severity of his injuries. In the court's opinion, the damages found by the jury's verdict can be considered conservative in amount but not inadequate as a matter of law."

It is apparent from the record that this is not a case for calling into service the rule relating to passion and prejudice of a jury. Nothing occurred during the trial to arouse anger, resentment, or to indicate an absence of reflection or disregard of the rights of the appellants. As pointed out by the trial court, "There is nothing in the record to substantiate any claim of perversity, unless the mere fact that the jury answered all of the questions consistently in favor of the defendant of itself shows perversity." We are of the opinion that the findings of the jury in the special verdict are well supported, and that the ruling of the trial court must be sustained.

*By the Court.*—Judgment affirmed.